## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GINA SUMMERS, on behalf of the Rock Holdings & Associated Companies 401(k) Savings Plan and on behalf of a class of similarly situated employee savings plans, CYNTHIA EDDY, on behalf of the Cadence Health Matched Savings Plan and on behalf of a class of similarly situated employee savings plans, and KAYLA JONES, on behalf of the Blue Shield of California Tax Deferred Salary Investment Plan and on behalf of a class of similarly situated employee savings plans,<br><br>          Plaintiffs,<br>v.<br><br>FMR LLC, FIDELITY BROKERAGE SERVICES LLC, FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC., FIDELITY MANAGEMENT & RESEARCH COMPANY, FIDELITY MANAGEMENT TRUST COMPANY, NATIONAL FINANCIAL SERVICES LLC, and JOHN DOES 1-100,<br><br>          Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Gina Summers, Cynthia Eddy, and Kayla Jones, individually, as representatives of a class of similarly situated persons, and on behalf of the Rock Holdings & Associated Companies 401(k) Savings Plan, the Cadence Health Matched Savings Plan, and the Blue Shield of California Tax Deferred Salary Investment Plan, allege as follows against Defendants FMR LLC, Fidelity Brokerage Services LLC, Fidelity Investments Institutional Operations Company, Inc., Fidelity Management & Research Company, Fidelity Management Trust Company, and National Financial Services, LLC (collectively, "Fidelity").

I.      **SUMMARY OF THE ACTION**

1.      This is an action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. ("ERISA"), for Fidelity's breaches of its fiduciary duties to United States 401(k) and similar defined contribution retirement plans ("Savings Plans") and their participants and beneficiaries. Plaintiffs are investors in 401(k) plans serviced by Fidelity.

2.      As a fiduciary for thousands of Savings Plans, Fidelity must act prudently and in the sole interest of these plans and their participants and beneficiaries. But since at least 2016, Fidelity has breached its fiduciary duties to the Savings Plans by charging mutual fund and other investment companies a substantial fee as a condition for their investment vehicles being offered on Fidelity's fund platform. Although Fidelity refers to this arrangement as an "infrastructure" fee, it is in fact an illegal and undisclosed pay-to-play fee (the "Fee") that Fidelity extracts from investment companies that wish to ensure their products are marketed and sold through Fidelity. The Fee drives up expense ratios borne by 401(k) plan participants, causing these participants to pay more in fees and receive lower returns on their investments.

3.      The *Wall Street Journal* reported that Fidelity instructed participating mutual funds not to disclose the Fee to any third party, including plan sponsors, plan beneficiaries, and the public. Based on internal Fidelity documents, the *Journal* further reported that the Fee represents "0.15% of a mutual-fund company's *industry-wide* assets." That the Fee is calculated by reference to industry-wide assets, rather than assets held only through Fidelity, confirms that the Fee bears no meaningful relationship to any "infrastructure" maintenance by Fidelity, and hence constitutes excessive compensation. The United States Department of Labor and the Massachusetts Securities Division have each opened investigations into Fidelity's imposition of the Fee.

4.      As the *Journal* noted, "[w]ith $1.5 trillion in third-party mutual-fund assets held by Fidelity customers, the firm's FundsNetwork is a powerful platform for fund companies seeking to engage with investors." Fidelity thus has significant leverage to coerce payments from mutual fund complexes interested in offering their funds through Fidelity. Fidelity also offers its own mutual funds, and the Fee enables it to offset losses it has sustained from investors flocking to lower-cost index funds.

5.      Fidelity's assessment of the Fee constitutes self-dealing that violates Fidelity's fiduciary duties and ERISA's prohibited transaction rule. Additionally, the Fee constitutes indirect compensation to Fidelity that must be disclosed to the Savings Plans under ERISA, which mandates written disclosure of any such compensation that Fidelity "reasonably expects to receive" in connection with its services. Despite its fiduciary and disclosure obligations, Fidelity continues to charge the Fee and keeps the amount of the Fee payments confidential.

6.      Plaintiffs bring this action under 29 U.S.C. §§ 1132(a) and (g) to enforce Defendants' liability under § 1109(a) to return all Savings Plan losses arising from each breach of fiduciary duty and to restore to the Savings Plans all profits gained through the use of Savings Plan assets. Plaintiff also seek to enjoin Fidelity's imposition of the undisclosed Fee.

## II.      JURISDICTION AND VENUE

7.      On behalf of the Savings Plans, Plaintiffs seek relief consisting of ERISA civil enforcement remedies against offending fiduciaries and other interested parties, and specifically, 29 U.S.C. §§ 1109 and 1132.

8.      This Court has federal question subject-matter jurisdiction under 28 U.S.C. § 1331 because this is an action under 29 U.S.C §§ 1109 and 1132(a), enforcement of which is reserved to federal courts under 29 U.S.C. § 1132(e)(1).

3

9.      This district is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because Fidelity maintains its principal offices and conducts its business and the business of its affiliated entities in this district.

## III.   PARTIES

### A.      Plaintiffs

10.     Plaintiff Gina Summers resides in West Bloomfield, Illinois. Ms. Summers is a participant in the Rock Holdings & Associated Companies Savings Plan, a 401(k) plan. Between 2016 and the present, Ms. Summers directed certain of her retirement savings into non-Fidelity mutual funds, including a Pacific Investment Management Company, LLC ("PIMCO") fund.

11.     Plaintiff Cynthia Eddy (neé Noble) resides in Green Bay, Wisconsin. Ms. Eddy is a participant in the Cadence Health Matched Savings Plan, a 401(k) plan. Between 2016 and the present, Ms. Eddy directed certain of her retirement savings into non-Fidelity mutual funds, including a JPMorgan Chase & Co. fund.

12.     Plaintiff Kayla Jones resides in Stockton, California. Ms. Jones is a participant in the Blue Shield of California Tax Deferred Salary Investment Plan, a 401(k) plan. Between 2016 and the present, Ms. Jones directed certain of her retirement savings into non-Fidelity mutual funds, including a PIMCO fund.

13.     From at least 2016 to present, Fidelity provided 401(k) plan services and acted as a fiduciary in relation to the Savings Plans, including Plaintiffs' plans.

### B.      Defendants

14.     Defendant FMR LLC is a Delaware Limited Liability Company with its principal offices located at 245 Summer Street in Boston, Massachusetts. FMR LLC is a holding

company that operates as the parent company for Fidelity and its affiliates, including the remaining Fidelity Defendants.

15.     Defendant Fidelity Brokerage Services LLC is a Delaware Limited Liability Company with its principal offices located at 245 Summer Street in Boston, Massachusetts. Fidelity Brokerage Services holds itself out as a broker-dealer and operates as a subsidiary of FMR LLC. Fidelity Brokerage Services is registered with the Financial Industry Regulatory Authority as a brokerage firm in the business of buying and selling securities on behalf of its customers, its affiliated bank, or both.

16.     Defendant Fidelity Investments Institutional Operations Company, Inc. is a Massachusetts corporation with its principal offices located at 245 Summer Street in Boston, Massachusetts. Fidelity Investments describes itself as a transfer agent for institutional mutual funds. Like Fidelity Brokerage Services, Fidelity Investments is a subsidiary of FMR LLC.

17.     Defendant Fidelity Management & Research Company is a Massachusetts corporation with its principal offices located at 245 Summer Street in Boston, Massachusetts. Fidelity Management & Research holds itself out as an investment advisor to Fidelity mutual funds, and is registered with FINRA as an investment advisor—an entity paid to manage investment portfolios and advise clients about securities. Fidelity Management & Research is also a subsidiary of FMR LLC.

18.     Defendant Fidelity Management Trust Company is a Massachusetts corporation with its principal offices located at 245 Summer Street in Boston, Massachusetts. Fidelity Management Trust is a subsidiary of FMR LLC and describes itself as a limited purpose trust company. It manages assets for corporate and public employee retirement funds, and provides trustee services for plan sponsors.

19.     Defendant National Financial Services LLC is a Delaware Limited Liability Company with its principal offices located at 245 Summer Street in Boston, Massachusetts. National Financial holds itself out as a broker-dealer and operates as a subsidiary of FMR LLC. National Financial is registered with FINRA as both a brokerage firm and an investment advisor.

20.     Defendants John Does 1-100 are those Fidelity agents, employees and/or affiliates who participated, aided or assisted in the imposition or concealment of the Fee or other wrongful conduct described in this complaint. Plaintiffs will identify these John Doe Defendants through discovery of records in the possession of Fidelity, including, without limitation, (1) the internal Fidelity document reviewed by the *Journal* describing the Fee,[1] and (2) any materials provided to the Department of Labor or the Massachusetts Securities Division in connection with their investigations.

## IV.    FIDELITY IS AN ERISA FIDUCIARY AND PARTY IN INTEREST

### A.     ERISA Fiduciaries and Parties in Interest

21.     ERISA fiduciaries include those persons and entities named as fiduciaries under ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), as well as any other persons who perform fiduciary functions. A person is an ERISA fiduciary if "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or

---

[1] Gretchen Morgenson, "Government Probes Fidelity Over Obscure Mutual-Fund Fees," *The Wall Street Journal* (Feb. 27, 2019), available at https://www.wsj.com/articles/fidelitys-fees-on-low-cost-funds-eyed-in-government-probe-11551263401 (last visited March 13, 2019).

discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

22.     ERISA defines a "party in interest" to an employee benefit plan to include: (1) "any fiduciary" to such a plan; and (2) a "person providing services to such plan." ERISA § 3(14), 29 U.S.C. § 1002(14).

**B.     Fidelity's Status as ERISA Fiduciary and Party in Interest**

23.     Based on its description of its 401(k) services, Fidelity is a fiduciary of the Savings Plans under ERISA § 3(21)(A), 29 U.S.C. §§ 1002(21)(A) and (38)(A)-(C), and a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14).

24.     Fidelity states on its website that its "401(k) services offer everything you need to help you run an efficient, successful retirement plan . . . and helps employees prepare for a comfortable retirement. From comprehensive administrative and reporting to support around responsible investment decisions, we partner with you to help build a 401(k) that delivers value—for both your business and your employees."

25.     Fidelity states that its 401(k) plan services allow employers to, among other things:

- "Make planning easier with our professional help with choosing investments, our all-in-one lifecycle funds, and managed account services."

- "Take advantage of plan administration and consulting that helps analyze your plan design, prescribe solutions, and measure progress on an annual basis."

- "Receive . . . insights on policies, regulations, and investment issues."

- "Find solutions, that work best for your business, and benchmark plan success with our investment consulting."

- "Get help streamlining plan administration and managing risk."

- "Optimize your plan design, manage costs, and understand changing fiduciary duties with insights, resources and reporting."

- "Keep employees informed with personalized, targeted communications to help them develop confidence in their decisions and understand next steps."

- "Provide participants with valuable support designed to empower them to improve behaviors and encourage them to invest appropriately for their goals."

- "Foster continual learning, starting with investing during enrollment and onboarding, followed by reports that detail action steps, plan updates, and retirement insights."

### C.    Fidelity's Fiduciary and Other Duties

26.    As an ERISA fiduciary, Fidelity is obligated to discharge its duties with respect to the Savings Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to the participants and their beneficiaries, and with the care, skill, prudence, and diligence under the prevailing circumstances that a prudent person, acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a), 29 U.S.C. § 1104(a).

27.    Because of their high potential for abuse, ERISA prohibits certain transactions with employee savings plans involving fiduciaries and parties in interest. ERISA § 406, 29 U.S.C. § 1106, prohibits a fiduciary or party in interest from causing a plan to engage in a transaction that the fiduciary or party in interest knows would result in a direct or indirect "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

28.    ERISA § 406 further prohibits plan fiduciaries from: (1) "deal[ing] with the assets of the plan in his own interest or for his own account"; (2) "in his individual or in any other capacity act[ing] in any transaction involving the plan on behalf of a party (or

8

represent[ing] a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries," or (3) "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

## V.   FACTUAL ALLEGATIONS

### A.   Fidelity's Services and Operation of an Investment Platform

29.     At all relevant times, Fidelity marketed itself as a full-service financial institution that can design and administer long-term retirement strategies and 401(k) plans for organizations of any size and their employees.

30.     Fidelity's "Corporate Fact Sheet"[2] states that, as of March 31, 2018, Fidelity had over $2.459 trillion in assets under management ("AUM"), including $2.086 trillion AUM from 504 mutual funds.

31.     Fidelity encompasses "more than 27 million people investing their own life savings, to nearly 23,000 businesses needing help managing their employee benefit programs, to more than 12,500 financial advisory . . . firms needing investment and technology solutions to invest their own clients' money."

32.     Fidelity's retirement services business is one of its largest and most profitable divisions. Fidelity's retirement services business has over $1.515 trillion of retirement AUM and over $3.803 trillion of retirement assets under administration.

33.     Fidelity represents that it is "the nation's No. 1 recordkeeper of 401(k) retirement savings plans."

---

[2] *Fidelity by the Numbers: Corporate Statistics* (2019), https://www.fidelity.com/about-fidelity/fidelity-by-numbers/corporate-statistics (last visited March 12, 2019).

34.     Fidelity's retirement services are performed by all Defendants working in coordination. These services include compliance, recordkeeping, asset transfers, allocation of participant contributions, and maintenance of the investment options made available to 401(k) plans.

35.     Fidelity is a fiduciary to the Savings Plans and all participants therein, including Plaintiffs and class members, and must abide by its fiduciary duties under ERISA, 29 U.S.C. § 1104 *et seq*.

36.     Mutual funds contract with financial entities like Fidelity for, among other services, managerial, administrative, accounting, recordkeeping, and legal services.

37.     Mutual funds that so contract pay the financial entities fees for their services. These fees include investment management fees, marketing fees, and distribution fees.

38.     Mutual funds typically pass on the cost of these fees to their investors.

39.     These fees must be reasonable and disclosed pursuant to law, including ERISA.

**B.      Fidelity's Management of Savings Plans and Its Imposition and Concealment of the Fee**

40.     At all relevant times, Fidelity has provided and continues to provide investment options and services to Plaintiffs' 401(k) retirement plans and other Savings Plans.

41.     Participants, including Plaintiffs, may choose the particular mutual funds in which to invest their contributions, along with any matching contributions from their employers. All such contributions constitute assets of ERISA-qualified plans.

42.     Fidelity allocates such contributions to "omnibus" accounts or sub-accounts corresponding to the various funds on the Fidelity platform that a participant has selected.

43.     In exchange for the contributions, a participant (and his or her plan) receive accumulation units or shares in the pertinent accounts or sub-accounts.

44.     Fidelity maintains ownership, discretion, authority, and control over these accounts and sub-accounts, as well as over the individual accumulation units or shares. Fidelity uses these accounts and sub-accounts as a means of purchasing and selling shares in mutual funds selected by participants.

45.     Fidelity can increase its own compensation by negotiating with mutual funds. Fidelity enjoys substantial negotiating leverage because it owns, manages, and controls the retirement assets in the accounts and sub-accounts.

46.     A mutual fund can obtain investment money from Fidelity participants only if Fidelity has selected the fund for inclusion on its platform, which is known as "FundsNetwork." Fidelity has complete control over which mutual funds are offered through FundsNetwork. Fidelity has unlimited discretion to add, substitute, and remove mutual funds on this platform, including to eliminate funds based on considerations like contract pricing.

47.     Fund shares offered by PIMCO, Eaton Vance Corp., and Nuveen Investments are among those available on the Fidelity platform. According to the *Journal*, Fidelity imposed the Fee on each of these fund complexes, resulting in increased expense ratios for participants that directed their retirement savings into associated funds.

48.     Over the past several years, Americans investing for retirement have increasingly opted for low-cost, passively managed index funds over higher-cost, actively managed funds. Correspondingly, Fidelity's fee income has decreased as a result of its lowering of expenses for its own funds to compete with such low-cost funds.

49.     In response to these trends, in or around 2016, Fidelity began assessing its participating mutual funds a substantial annual charge—the Fee.

50.     Fidelity warned mutual funds in written materials that any fund refusing to pay the Fee would "be subject to a very limited relationship" with Fidelity. Fidelity thereby communicated to participating funds that they must pay the Fee or they would be removed from the FundsNetwork, resulting in a loss of income.

51.     The Fee is properly characterized as a kickback because mutual funds paid it under threat of removal from Fidelity's platform and its payment served to share a portion of the funds' profits with Fidelity.

52.     The Fee constitutes an ERISA marketing and distribution fee that is subject to statutory disclosure requirements. Fidelity imposed the Fee on participating mutual funds as a condition for continuing to market and sell their products on the Fidelity platform.

53.     Although ERISA requires disclosure of such a marketing and distribution fee to the sponsors of the Savings Plans, Fidelity did not do so. Instead, in written materials provided to participating mutual funds, it warned the funds *not* to disclose the Fee while falsely characterizing it to plan sponsors as covering "infrastructure" costs.

54.     Mutual funds shift the cost of the Fee to their investors by increasing the overall fees charged on a fund. These increases, in turn, caused individual investors, including Plaintiffs and other class members, to (1) pay more in fees, and (2) receive lower returns on their investments. Due to this pass-through mechanism, individual investors have borne (and continue to bear) the cost of the Fee without knowing or having any basis to know they were doing so.

55.     Since the Fee came to light, and after the Department of Labor and Massachusetts Securities Division investigations were made public, Fidelity has represented that the Fee was disclosed to Savings Plans and their sponsors as covering the costs of maintaining

the infrastructure that is needed to make non-Fidelity mutual funds available. The Fee

payments, however, bear no relation to any administrative services, for "infrastructure" or

otherwise, that Fidelity performs.

56.     The Fee bears no relation even to the assets each paying fund maintains on the

Fidelity platform. Fidelity instead charges each paying fund 0.15% of the fund's *total* assets.

57.     By imposing and collecting the Fee from participating mutual funds, Fidelity

enriched itself unjustly and in violation of clearly established law.

58.     At all relevant times, Fidelity fraudulently concealed its solicitation and receipt

of these illicit kickback payments from the participating funds.

## VI.     AGENCY, ALTER EGO, AND CO-CONSPIRATOR ALLEGATIONS

59.     At all relevant times, each Defendant was a principal, agent, alter ego, joint

venture, partner, or affiliate of each Defendant, and in doing the acts alleged herein, was acting

within the course and scope of that principal, agent, alter ego, joint venture, partnership, or

affiliate relationship. Each Defendant had actual knowledge of the wrongful acts of each

Defendant; ratified, approved, joined in, acquiesced, or authorized the wrongful acts of each

Defendant; and retained the benefits of those wrongful acts.

## VII.    CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this suit individually and as a class action under Federal Rules of

Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of all participants in employee pension

benefit plans covered by the Employee Retirement Income Security Act of 1974, and subject to

Internal Revenue Code §§ 401(a) or 401(k), with which Fidelity has been in a contractual

relationship.

61.     Excluded from the class are Defendants, their parents, affiliates, subsidiaries, agents, legal representatives, predecessors, successors, assigns, employees, and immediate family members, and any entity in which Fidelity has a controlling interest or which has a controlling interest in Fidelity. Also excluded from this class are the judicial officers to whom this matter is assigned, their staff members, and their immediate family members.

62.     <u>Numerosity</u>. The class members are too numerous to be practicably joined. The class members are identifiable from information and records in the possession, custody, or control of Defendants. Notice of this action can be provided to all members of the class, and the disposition of their claims in a single action will provide substantial benefits to all parties and the Court.

63.     <u>Typicality</u>. Plaintiffs' claims are typical of the claims of other members of the class. Plaintiffs and each class member entered into a contract to participate in Fidelity's retirement 401(k) Plans, and were subject to the wrongful conduct alleged herein.

64.     <u>Adequacy of Representation</u>. Plaintiffs are members of the class and will fairly and adequately represent and protect the interests of the other class members. Plaintiffs have no interests that conflict with the interests of the other class members. Plaintiffs' counsel is competent and experienced in class action and other complex litigation, including class actions under ERISA, and will pursue this action vigorously.

65.     <u>Commonality and Predominance</u>. Common questions of fact and law exist as to all members of the class and predominate over any questions pertaining to individual class members. Among the questions common to the class are:

a.     whether Defendants have acted and continue to act as fiduciaries under ERISA in connection with the wrongful conduct alleged herein;

b.      whether Defendants breached their fiduciary duties under ERISA;

c.      whether Defendants engaged in prohibited transactions by receiving payments for their own benefit, earning excessive compensation, and charging excessive fees to the financial detriment of the Savings Plans;

d.      whether Defendants failed to disclose the existence and true nature of the kickback payments at issue, the excessive fees and compensation Defendants received, and the total amount of compensation they received; and

e.      whether Defendants participated in a prohibited transaction, in violation of 29 C.F.R. § 2550.408b-2, by failing to disclose the indirect compensation they received from mutual funds.

66.      Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The factual issues in this case are complex and concern a large number of financial transactions. Absent a class action, most class members would likely find the cost of litigating their claims individually to be prohibitively high and would have no effective remedy. Class treatment of the common questions in this litigation will conserve the resources of the courts and promote efficiency and consistency of adjudication.

67.      Injunctive Relief. Defendants acted (and continue to act) on grounds generally applicable to the class such that injunctive relief is warranted for the class as a whole.

## VIII.   CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty

68.      Plaintiffs reallege the foregoing allegations.

69.      Under ERISA § 3(21), 29 U.S.C. § 1002(21), Defendants were at all relevant times ERISA fiduciaries with respect to the Savings Plans and the invested assets of the Savings

Plans because: (1) Defendants exercise discretionary authority or control respecting the management of the Savings Plans, including respecting management of disposition of the Savings Plan assets; (2) Defendants render investment advice for a fee or other direct or indirect compensation from the Savings Plans; and (3) Defendants exercise discretionary authority or responsibility over the Savings Plans.

70.     As part of Defendants' services, Defendants managed and controlled which mutual funds would be available to the Savings Plans on Fidelity's FundsNetwork platform.

71.     Defendants are obligated to discharge their duties with respect to Savings Plan assets with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

72.      Defendants are obligated to discharge their duties to the Savings Plans "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the" Savings Plans. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

73.     Contrary to their duties and obligations under ERISA, Defendants failed to act loyally and prudently to manage the assets of the Savings Plans solely in the interest of participants and beneficiaries, including Plaintiffs.

74.     Defendants breached their fiduciary duties in at least the following respects:

        a.      Defendants charged non-Fidelity mutual funds the Fee;

        b.      Defendants set the Fee amount by reference to each such mutual fund's industrywide assets, as opposed to its assets held by Fidelity customers; and

c.    Defendants actively concealed the Fee from Savings Plans and their sponsors, participants, and beneficiaries, including by falsely labeling it an administrative fee.

75.    The Fee was not set in an amount tailored to defray reasonable expenses of administering the Savings Plans. The Fee was instead imposed for the purpose of enriching Fidelity and offsetting its losses from investors increasingly diverting investment capital into lower expense index funds.

76.    As a direct and proximate of Defendants' breaches of fiduciary duties, the Savings Plans sustained losses, causing Plaintiffs and class members to lose substantial portions of their retirement savings. Those losses would have been minimized or avoided had Defendants not breached their fiduciary duties.

77.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), Defendants are liable to restore all losses to the Savings Plans caused by Defendants' breaches of fiduciary duties, to return all profits gained through use of Savings Plan assets, and to provide other equitable relief as appropriate. Plaintiffs also seek an award of reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g).

## COUNT II
### Breach of Fiduciary Duty and Violation of Prohibited Transaction Rule

78.    Plaintiffs reallege the foregoing allegations.

79.    Under ERISA §§ 3(14), and (21), 29 U.S.C. §§ 1002(14) and (21), Defendants were at all relevant times ERISA fiduciaries and parties in interest.

80.    The scope of Defendants' services—and their concomitant fiduciary duties and responsibilities—included managing Savings Plan assets and determining which mutual funds were available for investment on Fidelity's FundsNetwork platform.

17

81.     Fidelity has engaged and continues to engage in prohibited transactions in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), by dealing with the assets of the Plans in its own self-interest.

82.     Under § 406, a fiduciary "shall not cause the plan to engage in a transaction, if he knows or should now that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." Further, a fiduciary "shall not . . . (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving assets of the plan."

83.     Fidelity's assessment and collection of the Fee in order to recoup profits it was losing to lower cost funds constitutes self-dealing by a fiduciary and party in interest, and violates each of the proscriptions of § 406.

84.     In violation of their fiduciary duties and the prohibited transaction rule, Defendants engaged and continue to engage in self-dealing and prohibited transactions with fiduciaries and parties in interest, namely themselves and non-Fidelity mutual funds, which self-dealing and prohibited transactions are *per se* illegal under § 406.

85.     Such transactions were not exempted by an individual, class, or statutory exemption, including the general statutory exemption for services or offices space codified at 29 C.F.R. § 2550.408b-2.

86.     The Fee charged to non-Fidelity mutual funds is passed on by them to Savings Plan participants in the form of increased expense ratios. The Fee accordingly constitutes an

indirect transfer of Savings Plan assets to Fidelity under § 406. Fidelity's failure to disclose this indirect compensation is prohibited under ERISA because it is *per se* unreasonable under 29 C.F.R. § 2550.408b-2.

87.     As a direct and proximate of Defendants' violations of § 406, the Savings Plans sustained losses, causing Plaintiffs and class members to lose substantial portions of their retirement savings. Those losses would have been minimized or avoided had Defendants not violated § 406.

88.     Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), Defendants are liable to restore all losses to the Savings Plans caused by their violations of § 406, to return all profits made through use of Savings Plan assets, and to provide other equitable relief as appropriate. Plaintiffs also seek an award of reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g).

## COUNT III

### Violation of Prohibited Transaction Rule and Knowing Breach of Trust

89.     Plaintiffs reallege the foregoing allegations.

90.     To the extent any Defendant is not deemed an ERISA fiduciary or co-fiduciary, Defendants remain liable for all recoverable damages and relief as knowing participants in the prohibited transactions and breaches of fiduciary duty alleged herein, and in Defendants' breaches of trust.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment through an order:

      A.      certifying this action for class treatment, appointing Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel;

      B.      entering appropriate declaratory and injunctive relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

      C.      awarding damages, restitution, and/or disgorgement, including pre-judgment and post-judgment interest under ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), on each Count in an amount to be determined at trial;

      D.      awarding reasonable attorneys' fees and costs of litigation; and

      E.      granting such other relief as the Court may deem just and proper.

## X.   DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial for any counts for which a trial by jury is permitted by law.

## XI.   NOTICE PURSUANT TO ERISA § 502(h)

Pursuant to ERISA § 502(h), 29 U.S.C. § 1132(h), the undersigned affirms that on this date, a true and correct copy of this complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return receipt requested.

Dated:  March 18, 2019              Respectfully submitted,

                          **BLOCK & LEVITON LLP**

                          By: /s/ *Jeffrey Block*

                          Jeffrey Block
                          155 Federal Street, Suite 400
                          Boston, MA 02110
                          Telephone: (617) 398-5600
                          Facsimile:  (617) 507-6020
                          jeff@blockesq.com

**GIRARD SHARP LLP**

Dena C. Sharp (*pro hac* forthcoming)
Jordan Elias (*pro hac* forthcoming*)*
Adam E. Polk (*pro hac* forthcoming*)*
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

*Attorneys for Plaintiffs*